1 | Farhad Novian (SBN 118129)
  | farhad@novianlaw.com
2 | Paul Rogoff (SBN 232163)
  | paul@novianlaw.com
3 | **NOVIAN & NOVIAN LLP**
  | 1801 Century Park East, Suite 1201
4 | Los Angeles, CA 90067

5 | Tel: (310) 553-1222
  | Fax: (310) 553-0222

6 |
  | Attorneys for United Medical Imaging Healthcare, Inc.
7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| UNITED MEDICAL IMAGING HEALTHCARE, INC., | CASE NO: |
|---|---|
| Plaintiff, | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, AND FOR THE RETURN OF FUNDS WITHHELD UNLAWFULLY** |
| vs. | |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, Robert F. Kennedy, Jr., in his official capacity as Secretary of the United States Department of Health and Human Services; HEALTH RESOURCES AND SERVICES ADMINISTRATION; THOMAS ENGELS, in his official capacity as Administrator of the Health Resources & Services Administration; DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the United States Department of Treasury, | |
| Defendants. | |

Plaintiff UNITED MEDICAL IMAGING HEALTHCARE, INC. ("UMIH" or "Plaintiff") brings this action for injunctive and declaratory relief against defendants U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES ("HHS"), ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the HHS, HEALTH RESOURCES & SERVICES ADMINISTRATION ("HRSA"), THOMAS ENGELS, in his official capacity as Administrator of the HRSA, DEPARTMENT OF THE TREASURY ("Treasury"), SCOTT BESSENT in his official capacity as Secretary of the U.S. Department of the Treasury (collectively, "Defendants").

## INTRODUCTION

1. UMIH is a for-profit medical imaging center with a distinct focus on the Los Angeles and Orange County markets it serves.

2. This action seeks relief under the Administrative Procedure Act from the arbitrary, capricious, and unlawful actions of Defendants in their administration of the Provider Relief Fund ("PRF") established under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").

3. UMIH worked tirelessly to care for patients during the COVID-19 pandemic. It went to similar lengths to try to reach a resolution of this matter with the HRSA, without success.

4. HRSA was tasked by HHS with distributing pandemic relief dollars from the PRF to eligible providers on behalf of HHS.

5. Due to the emergency nature of the pandemic, there was little time to establish a regulatory regime governing the PRF. Thus, HRSA administered the PRF via a wide array of guidance that distributed PRF dollars into four phases of both general and targeted distributions. The guidance for the distribution of dollars, as well as for the reporting requirements imposed on providers who elected to receive PRF dollars, changed many times over the course of the four distribution phases.

6. At its core, this case is clear and straightforward. After granting UMIH's phase 4 appeal, HRSA assured UMIH in writing on or about April 16, 2024 that

Plaintiff would be permitted to submit any reporting for past phases for which UMIH was not in compliance with reporting requirements. Despite these assurances, however, Defendants wrongfully denied UMIH access to the online "portal" for phase 3 to submit required phase 3 reporting. Instead, Defendants initiated collection actions, threatening UMIH's ability to provide essential healthcare services to its patients. Most recently, standard Medicare payments to UMIH have been withheld, purportedly to force UMIH to repay the phase 3 dollars it received.

7. HRSA's actions are particularly arbitrary and capricious because HRSA: (a) denied UMIH's phase 3 appeal; (b) granted UMIH's phase 4 appeal on or about April 16, 2024; (c) explicitly promised in the April 16, 2024 writing that UMIH could submit reporting for past phases, including Phase 3, but then failed to provide UMIH access to the phase 3 portal to do so; and (d) initiated collection actions through the Treasury Department—**prior to the April 16, 2024 communication**—on or around March 26, 2024, despite its written assurance just weeks later and UMIH's demonstrated willingness to comply with reporting requirements.

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) as this action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

9. Venue is proper in the Central District of California under 28 U.S.C. § 1391(e) because Plaintiff does business in this district and a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

10. Plaintiff UMIH is a California corporation that provides essential medical imaging services to patients throughout California, with its principal place of business at 11411 Brookshire Ave, Unit 101, Downey, CA 90241.

11. Defendant HHS is a federal agency of the United States headquartered in Washington, D.C., responsible for administering the PRF program. HHS may be

1  served by serving on the United States a copy of the summons and complaint through
2  the United States Attorney for the Central District of California and by sending a copy
3  of the summons and complaint by certified mail to the Attorney General of the United
4  States and to HHS's headquarters and principal place of business at 200 Independence
5  Avenue SW, Washington D.C., 20201.

6        12. Defendant Robert F. Kennedy, Jr. is the United States Secretary of Health and Human Services. Defendant Kennedy, by and through his predecessor and designees at HHS and HRSA, issued the agency actions challenged in this case. Kennedy is being sued solely in his official capacity. Kennedy may be served by serving on the United States a copy of the summons and complaint through the United States Attorney for the Central District of California and by sending a copy of the summons and complaint by certified mail to the Attorney General of the United States and to HHS's headquarters.

14        13. Defendant HRSA is a United States government agency to which HHS delegated certain authority to administer programs enacted by the COVID-related legislation, including the PRF. HRSA's headquarters and principal place of business are at 5600 Fishers Lane, Rockville, Maryland 20852. HRSA may be served by serving on the United States a copy of the summons and complaint through the United States Attorney for the Central District of California and by sending a copy of the summons and complaint by certified mail to the Attorney General of the United States and to HHS's headquarters.

22        14. Defendant THOMAS ENGELS is the Administrator of HRSA. Engels is sued solely in her official capacity. Engels may be served by serving on the United States a copy of the summons and complaint through the United States Attorney for the Central District of California and by sending a copy of the summons and complaint by certified mail to the Attorney General of the United States and to HHS's headquarters.

28        15. Defendant United States Treasury Department is a federal agency

1  headquartered in Washington, D.C., responsible for collecting allegedly past due PRF payments. Treasury may be served by serving on the United States a copy of the summons and complaint through the United States Attorney for the Central District of California and by sending a copy of the summons and complaint by certified mail to the Attorney General of the United States and to Treasury's headquarters located at 1500 Pennsylvania Avenue, NW, Washington D.C., 20220.

16. Defendant Scott Bessent is the Secretary of the Treasury Department. Bessent is sued solely in his official capacity. Bessent may be served by serving on the United States a copy of the summons and complaint through the United States Attorney for the Central District of California and by sending a copy of the summons and complaint by certified mail to the Attorney General of the United States and to Treasury's headquarters.

17. Non-party Transworld Systems, Inc., on information and belief, is a third-party debt collector to whom Treasury sold or assigned responsibility for recouping a portion of the PRF funds distributed to UMIH during phase 3.

## BACKGROUND

**The Provider Relief Fund and HRSA's Implementation**

18. Congress established the PRF through the CARES Act to support healthcare providers during the COVID-19 pandemic. Congress appropriated roughly $186 billion to the PRF fund, and additional amounts to other special purpose funds.

19. The funding appropriated by Congress pursuant to the PRF was intended to reimburse healthcare providers for increased expenses and lost revenues attributable to the COVID-19 pandemic, and to ensure continued operation of essential healthcare services.

20. Congress directed HHS to administer the PRF funds. HHS and Xavier Becerra (then Secretary of HHS), in turn, assigned responsibility for distributing PRF monies to the HRSA and Administrator Engels.

21. HRSA administers the PRF on behalf of HHS through four phases of

general distributions and various targeted distributions.

22. HRSA did not implement the PRF through formal notice and comment rulemaking. Rather, it developed distribution and payment methods internally and issued guidance on the HRSA website in the form of FAQs and other guidance documents on an ad hoc basis. HRSA frequently modified the distribution methodologies, procedures, and application process arbitrarily and without formal notice to providers.

23. HRSA distributed the PRF funds in an arbitrary and capricious manner, including by distributing funds inequitably among similarly situated providers and by setting up payment distribution systems that resulted in substantial administrative confusion and delay.

**UMIH's PRF Participation and Essential Healthcare Services**

24. The PRF was distributed to providers in 4 phases. UMIH received PRF funding under Phase 1, Phase 3, and Phase 4 of the program to support its continued provision of essential medical imaging services during the pandemic.

25. For Phase 3, UMIH submitted applications on or around October 22, 2020 and December 10, 2020.

26. In March 2021, UMIH received two Phase 3 PRF wire transfers for $167,298.76 and $1,332,980.23. The total amount of funds received for Phase 3 by UMIH was $1,500,278.99.

27. As directed, UMIH used the PRF funds it received to cover essential expenses and maintain healthcare operations during the COVID-19 pandemic, including:

    a. Rent expenses;

    b. Payroll costs;

    c. Medical supplies; and

    d. Medical equipment maintenance.

28. These expenditures were necessary and appropriate uses of PRF funds,

enabling UMIH to continue providing essential medical imaging services to patients during the public health emergency.

**Initial Reporting Challenges and Portal Issues**

29. UMIH designated its Controller, Anna Moon, as the authorized individual responsible for drafting and submitting PRF reports. Ms. Moon was listed as the point of contact for UMIH in the PRF Portal.

30. UMIH and Ms. Moon encountered significant difficulties with the PRF Phase 3 reporting portal's interface, which displayed reporting numbers and reporting status in a manner that incorrectly suggested reporting was complete. For instance, in 2022, Ms. Moon thought she had submitted the required reporting for Phase 3 through the Phase 3 online portal. When Ms. Moon logged back into the portal the following day to confirm reporting had been completed, the portal displayed input numbers that led Ms. Moon to reasonably believe all reporting had been successfully submitted and that UMIH had met all deadlines.

31. This turned out to be incorrect, but UMIH was not even made aware of any purported Phase 3 delinquency until it later received a letter regarding purported Phase 4 delinquency.

32. UMIH also encountered difficulties with its Phase 4 reporting and, unlike with what happened during Phase 3, ultimately received notice that it had allegedly failed to comply with HRSA's Phase 4 reporting requirements.

33. In both instances, UMIH sought permission to appeal from HRSA regarding its reporting for Phase 3 and Phase 4.

34. By the time Plaintiff learned it was allegedly delinquent on reporting for Phase 3, HRSA had already sent the matter to the Treasury Department for collection. HRSA refused to discuss the matter with UMIH, claiming that once it sent a debt to collections neither HRSA nor HHS were able to even discuss the matter with UMIH.

35. Thus, HRSA denied UMIH's request to appeal regarding Phase 3

reporting requirements because HRSA had already sent the Phase 3 debt to collections.

36. HRSA granted UMIH's appeal regarding Phase 4 reporting requirements on April 16, 2024.

37. In its letter dated April 16, 2024 granting UMIH's Phase 4 appeal, HRSA explicitly authorized UMIH to submit reporting not only for Phase 4, but also for any other past phases for which UMIH was allegedly not in compliance, including Phase 3.

**HRSA's Failure to Provide Promised Access and Treasury's Collection Actions**

38. Despite HRSA's written authorization for UMIH to bring itself into compliance with reporting requirements for past phases of PRF funds, UMIH was never provided access to the Phase 3 reporting portal to submit the required information.

39. Between April 16, 2024 and August 1, 2024, UMIH made no fewer than six (6) written or telephonic requests to HRSA seeking access to submit its Phase 3 reporting as promised in HRSA's Phase 4 appeal determination letter. HRSA either failed to respond or provided vague responses indicating the matter was under review.

40. On or around March 26, 2024, the Centralized Receivables Service ("CRS") issued two past due invoices to UMIH. One invoice demanded payment of $169,057.12, which included the loan principal of $167,298.76 plus interest and penalties. The other invoice demanded payment of $1,346,990.22, which included the principal loan amount of $1,332,980.23 plus interest. The CRS invoices indicate that CRS is a service provided by the U.S. Department of the Treasury to Federal agencies to assist in the management of accounts receivable.

41. In or around August 2024, UMIH learned, without having received prior notice, that Treasury had begun withholding Medicare payments to recoup allegedly "delinquent debt" owed to HHS. Specifically, Medicare payments for current UMIH patient services were being withheld by the U.S. Department of the

Treasury, Bureau of the Fiscal Service. A true and correct copy of a Medicare retention letter, dated on or around December 8, 2024, is attached hereto as **Exhibit B**. There was also an instance where the withheld payment was taken from an IRS tax credit in connection with UMIH's 2023 federal income taxes. A true and correct copy of this IRS tax credit retention letter, dated on or around October 8, 2024, is attached hereto as **Exhibit C**.

42. These withholdings total $1,577,976.56 despite the fact that the total amount of funds received by UMIH for Phase 3 was $1,500,278.99.

43. The withheld Medicare payments represent compensation for essential medical imaging services provided to Medicare beneficiaries that are entirely unrelated to the PRF program or Phases 1-4 reporting issues.

44. UMIH received no advance notice that Medicare payments would be withheld and no opportunity to contest the withholding before it began.

45. The withholding of these Medicare payments is being done under direct authorization from HHS and Treasury to withhold Medicare payments until the disputed PRF amount is recovered.

**Harm from Collection Activities and Medicare Withholding**

46. The withholding of Medicare payments has caused severe financial hardship jeopardizing, among other things, UMIH's:
   a. Ability to meet payroll obligations;
   b. Medical equipment lease payments;
   c. Ability to purchase essential medical supplies;
   d. Ability to fully compensate its staff;
   e. Breach of vendor contracts due to payment delays;
   f. Credit rating, thus affecting UMIH's ability to obtain essential financing;
   g. Vendor relationships due to payment disruptions;
   h. Reputation and good will.

47. The combined effect of collection activities and Medicare withholding threatens UMIH's ability to, among other things:

    a. Maintain staffing levels;

    b. Keep medical equipment properly serviced and calibrated;

    c. Accept new Medicare patients;

    d. Maintain required insurance coverage.

**<u>UMIH's Exhaustion of Administrative Remedies</u>**

48. Despite HRSA's determination of non-compliance, UMIH never received prior notification or correspondence from HRSA regarding Phase 3 delinquency or repayment obligations before the matter was referred to Treasury for collection in or around March 2024.

49. According to HRSA's correspondence, once a debt has been sent to Treasury for collection, neither HHS nor HRSA are able to communicate with providers about this debt.

50. Therefore, UMIH never had an opportunity to address or rectify its allegedly delinquent Phase 3 reporting directly with HHS or HRSA.

51. Given the content of HRSA's April 16, 2024 correspondence granting UMIH's request for a Decision Review of its Phase 4 reporting, it is apparent HHS and/or HRSA itself may have inadvertently sent the Phase 3 debt to Treasury for collection before it meant to do so. This appears to be the case because the April 16, 2024 letter explicitly advises UMIH that if it is "non-compliant with submitting a report in any other Reporting Period, you are authorized to also complete and submit those reports at this time. All the reports that need to be completed and submitted will be listed under the Active Reports tab. Please ensure that you use this opportunity to submit all reports that are due to HRSA to avoid future actions for non-compliance."

52. As explained above, despite this language, HRSA never made the Phase 3 portal available for UMIH to access to correct any alleged reporting delinquency for which it may have been responsible.

53. Between February 2024 and January 2025, UMIH made multiple attempts to resolve this matter through administrative channels, including:

    a. Written requests to HRSA for confirmation that Phase 3 reporting had been completed in February 2024;

    b. Written and telephonic requests for Phase 3 portal access after receipt of the April 16, 2024 correspondence from HRSA;

    c. Submission of supporting documentation demonstrating appropriate use of funds; and

    d. Multiple telephonic and written requests to CRS asking to appeal the Treasury collection notices.

54. On August 20, 2024, UMIH submitted a detailed Reconsideration Request for Debt Owed letter to the Department of the Treasury's Debt Management Services with supporting declarations and documentary evidence. A true and correct copy of this Reconsideration Request is attached hereto as **Exhibit A**.

55. This Reconsideration Request included:

    a. A comprehensive explanation of the circumstances leading to the Phase 3 reporting issues;

    b. Documentation of UMIH's good faith efforts to comply with reporting requirements;

    c. Evidence of HRSA's written authorization to submit reporting for past Phases;

    d. Declarations from UMIH's Medical Director, Revenue Integrity Manager, and Controller attesting to the facts; and

    e. Documentation of UMIH's appropriate use of PRF funds for pandemic-related expenses.

56. As of the date of the filing of this Complaint, UMIH has still not received a response to its August 20, 2024 Reconsideration Request despite numerous requests for a response. The most recent request was communicated on or around

1 December 18, 2024.

2    57.  Despite UMIH's extensive efforts to resolve this matter through administrative channels, Treasury has continued collection activities and HHS and HRSA have never provided the promised access to submit Phase 3 reporting.

58.  There is no formal administrative appeals process for PRF reporting determinations, leaving UMIH without adequate administrative remedies.

59.  UMIH has exhausted all available administrative remedies and has no adequate remedy at law other than this action.

## CLAIMS FOR RELIEF

60.  Courts recognize a strong presumption favoring judicial review of administrative action.

61.  The Administrative Procedure Act ("APA") provides that, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

62.  The APA further provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

63.  In addition, the APA permits courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

64.  Finally, the APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "exceeds statutory authority" or is "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (C), (E).

65.  Agency action is arbitrary and capricious if the agency fails to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted).

# COUNT 1 – DECLARATORY RELIEF

(Violation of Administrative Procedure Act - 5 U.S.C. § 706, 28 U.S.C. §§ 2201-2202)

(Against All Defendants)

66. UMIH incorporates by reference paragraphs 1 through 65 as if fully set forth herein.

67. The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

68. Defendants' actions are arbitrary, capricious, and contrary to law because:

   a. HRSA granted UMIH's Phase 4 appeal and explicitly authorized submission of past phase reporting but failed to provide the technical means to do so;

   b. HRSA initiated collection action without prior notice despite its written assurance allowing past phase reporting;

   c. Treasury continues collection efforts despite UMIH's good faith attempts to comply and submission of a detailed Reconsideration Request with supporting documentation;

   d. HRSA's treatment of Phase 3 and Phase 4 reporting requirements has been arbitrary, capricious, inconsistent and contradictory; and

   e. Defendants' actions are inconsistent with the CARES Act's purpose of supporting healthcare providers during the COVID-19 pandemic.

69. Due to the Defendants' unlawful actions, UMIH has expended countless hours attempting in vain to rectify the matter.

70. Defendants' actions have also resulted in the withholding of Medicare

payments that should have been made to UMIH for providing its patients with essential medical services.

71. The Court should hold unlawful the decision by Defendants to send the Phase 3 debt to collections because that decision was arbitrary, capricious, and contrary to law.

72. The Court should hold unlawful the collection efforts ordered, overseen and facilitated by Defendants because these collection efforts have been arbitrary, capricious, and contrary to law.

## COUNT 2

(Violation of Administrative Procedure Act - 5 U.S.C. §§ 705, 706)

(Against All Defendants)

73. UMIH incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74. Section 705 of the APA provides that, to prevent irreparable injury, a reviewing court "may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705.

75. The APA also provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

76. Defendants have unlawfully withheld and unreasonably delayed agency action as follows:

    a. Defendants failed to provide UMIH with promised access to submit Phase 3 reporting;

    b. Defendants failed process UMIH's Phase 3 reporting despite granting its Phase 4 appeal;

    c. Defendants failed to properly maintain its reporting portal to allow authorized submissions;

    d. Defendants failed to respond to UMIH's multiple requests for

technical access and assistance other than to say they could no longer communicate with Plaintiff about the Phase 3 debt.

e. Defendants have failed to respond to Plaintiff's August 20, 2024 Reconsideration Request;

f. Under the direction of HHS/HRSA, Treasury has withheld Medicare patient payments from UMIH.

77. Defendants' actions are the sole reason that UMIH was never able to submit the reporting requirements for its Phase 3 distribution dollars.

78. There is a substantial likelihood that UMIH will prevail on the merits. Defendants' actions were arbitrary and capricious because:

a. Their confusing Phase 3 reporting portal led Plaintiff to believe it had submitted required reporting for Phase 3;

b. They unreasonably deprived UMIH of an opportunity to upload required reporting after the April 16, 2024 letter informing Plaintiff that the Phase 3 portal would be available to Plaintiff to cure any alleged reporting delinquencies;

c. They unreasonably sent the Phase 3 debt to collections without first providing proper notice to Plaintiff; and

d. They have unreasonably withheld, and will continue to withhold, Medicare patient payments meant for UMIH and UMIH tax credits to satisfy a debt they should not have been collecting on in the first place.

79. UMIH faces a substantial risk of irreparable harm absent a preliminary injunction pending a trial on the merits because, if Medicare funds and tax credits continue to be withheld, Plaintiff will be damaged in all the ways set forth above. Until these funds are recouped by Plaintiff, its ability to continue normal operations while having at minimum $1,577,976.56 less to devote to operational expenses will be in jeopardy.

80. The threatened injury to UMIH outweighs any possible damage to Defendants as an injunction would simply require Defendants to cease collection activities to provide HRSA with the appropriate time needed to review Plaintiff's Phase 3 reporting.

81. The public interest is served by an injunction as it will ensure that UMIH, a critical provider of medical services to southern California during the COVID-19 pandemic, is provided an opportunity to show that its Phase 3 reporting satisfies all of the HRSA/HHS PRF requirements.

82. Accordingly, pursuant to Central District Local Rule 65-1, an Application for Preliminary Injunctive Relief will be filed shortly after this Complaint.

**COUNT 3**

(Claim for Return of Unlawfully Withheld Funds Under 5 U.S.C. § 702)

(Against All Defendants)

83. UMIH incorporates by reference paragraphs 1 through 82 as if fully set forth herein.

84. Defendants' actions in referring UMIH's alleged debt to collections and authorizing the withholding of Medicare payments while UMIH was actively seeking to resolve and comply with reporting requirements and after HRSA's written authorization to submit reporting for past phases was wrongful, arbitrary and capricious.

85. Plaintiff UMIH seeks specific relief in the form of the return of Medicare payments unlawfully withheld.

86. Plaintiff seeks restitution of specific funds, not compensatory relief.

87. The funds being sought are specific, identifiable Medicare payments that have been wrongfully withheld from UMIH.

88. The withholding occurred as a direct result of the agencies' arbitrary and capricious denial of UMIH's attempt to correct its reporting for the Phase 3 PRF

distributions it received totaling $1,500,278.99.

89. But for the unlawful actions of these defendant agencies, UMIH would have received these Medicare patient payments without interruption or diminishment.

90. UMIH seeks equitable restoration of the status quo by return of these specific funds.

91. The withholding of Medicare payments is causing immediate and irreparable harm to UMIH by:

    a. Disrupting UMIH's cash flow needed for essential operations;

    b. Interfering with UMIH's ability to serve Medicare patients;

    c. Threatening UMIH's ability to maintain necessary medical equipment and supplies;

    d. Threatening UMIH's ability to maintain staffing levels;

    e. Complicating UMIH's efforts to keep medical equipment properly serviced and calibrated;

    f. Threatening UMIH's ability to accept new Medicare patients;

    g. Threatening UMIH's ability to maintain required insurance coverage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United Medical Imaging Healthcare respectfully requests this Court enter judgment in its favor, and:

1. Declare unlawful, vacate, and set aside HRSA's decision to report UMIH's Phase 3 debt to Treasury for collection;

2. Declare that HRSA's failure to make the Phase 3 portal available to Plaintiff for the completion of its reporting requirements was arbitrary, capricious and

contrary to law, and therefore violates the APA;

    3.    Enter a preliminary and permanent injunction restraining Defendants from continuing with their Phase 3 debt collection efforts until after an adequate review of UMIH's Phase 3 reporting has been undertaken by HRSA;

    4.    Order HRSA to reconsider the timely Phase 3 reporting Plaintiff attempted to provide via the Phase 3 portal;

    5.    Order Defendants to repay the Medicare patient funds and tax credits that have been unlawfully withheld from UMIH;

    6.    Award UMIH its reasonable attorney's fees, expenses, and costs pursuant to 28 U.S.C. § 2412(d)(1)(A); and

    7.    Grant such further relief as the court deems just and necessary.

Respectfully submitted,

DATED: March 12, 2025        NOVIAN & NOVIAN

                                           */s/ Farhad Novian*
                                           Farhad Novian
                                           Paul Rogoff
                                           Attorneys for United Medical Imaging Healthcare, Inc.